# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALEXA BULLOCK,

     Plaintiff,

       v.

    No. 04 C 6638
    Judge James B. Zagel

AON CONSULTING, INC. OF NEW
JERSEY,

     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Alexa Bullock claims that Aon Consulting denied her opportunities for advancement while she was employed by the company, and then terminated her employment because of her race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981. Aon has moved for Summary Judgment on these issues. For the reasons stated below, Aon's motion is granted.


**Facts**

I will accept the following facts as true for the purposes of summary judgment. Plaintiff Alexa Bullock ("Bullock") started working at Actuarial Science Associates ("ASA") in June 1999. In October of 2000, the Defendant, Aon Consulting, Inc. of New Jersey ("Aon") acquired ASA, and Bullock became an employee in Aon's Rolling Meadows office. During her employment, Bullock was the "team leader" for the Pension Specialist Group dedicated to AT&T, one of Aon's "jumbo market" clients. As team leader, her duties involved dealing with several aspects of AT&T's pension benefits as well as overseeing the specialists in her group.

During this time she reported directly to Patricia Wilner, the Director of Operations.  Wilner reported to John Hebenstreit, the Vice President of Service Delivery for AT&T.

After reporting problems with Wilner in 2001, Bullock was offered a comparable position on the team with Lucent, Aon's other "jumbo market" client.  Bullock, however, declined the offer, choosing instead to stay with AT&T.  In 2004 Lucent decided not to renew its contract with Aon, and the staff from that client was reassigned.  Earlier that same year, Ken Mayda, the Client Delivery Manager for AT&T, offered Bullock the position as AT&T's Tuition Reimbursement Program Manager.  She declined this offer as well. Wilner eventually accepted the same offer, and still occupies that position.  Once Wilner left, Bullock began reporting directly to Hebenstreit.  Cheryl Schilling temporarily filled Wilner's position, which was eventually filled permanently by Tanya Baird.

Ultimately, after Aon's business with AT&T also began to decline, Aon decided to eliminate teams dedicated to only one client and instead form units that serviced multiple clients.  As a result, call center representatives and specialists were no longer in the same area, and reductions in staff were necessary.  Mayda and Hebenstreit eventually decided to eliminate Bullock's supervisory position, as well as several others.  They claimed that Bullock's higher salary, combined with her inability to fill in for all of the specialists she oversaw made her more expendable than other employees.

Consequently, Bullock has filed this suit alleging racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., and under 42 U.S.C. §1981.  Bullock claims that she was limited in job opportunities because of a failure to promote and was discharged on the basis of her race.  Aon now moves for summary judgment.

**Summary Judgment**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In determining whether any genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *See Pipitone v. United States,* 180 F.3d 859, 861 (7th Cir. 1999) (citations omitted). Aon argues that summary judgment is appropriate because Bullock cannot establish a *prima facie* case of discrimination for any of her claims.[1]

**Racial Discrimination in Job Opportunities under Title VII**

Title VII makes it illegal for an employer "to limit . . . [an employee's] employment opportunities . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(2). Since she does not have any direct evidence of discrimination, in order to avoid summary judgment Bullock must rely on the three-step burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this method, an employee seeking to establish a *prima facie* case of discrimination in job opportunities under Title VII must show that: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she was rejected for the position; and (4) a similarly situated person who was not a member of the protected class and was not better qualified was promoted. *See Dandy*

---

[1] Bullock's Title VII and Section 1981 claims of race discrimination have the same liability standards and are analyzed in the same manner. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998).

*v. United Parcel Service*, 388 F.3d 263, 273 (7th Cir. 2004); *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

If established, the prima facie elements raise a rebuttable presumption of discrimination. *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149 (7th Cir. 1996). The burden of production – not proof – then shifts to Aon for purposes of articulating a legitimate, nondiscriminating reason for its actions. *See id.* If Aon satisfies that burden, Bullock must then present evidence showing that Aon's articulated reason for not promoting her were only a pretext for discrimination. *See Cianci*, 152 F.3d at 726; *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997).

Bullock is a member of a protected class under Title VII, but Aon argues that she cannot show other elements of her prima facie case of discrimination. Specifically, Aon claims that: (1) Bullock cannot establish that she was more qualified for the positions assigned to Jeff Redford, Maritza Nowakowski and Cheryl Schilling; (2) Bullock cannot identify any specific positions she is referring to with respect to Schilling and Nowakowski; and (3) Bullock has not established that she is similarly situated to Nowakowski, Redford, Schilling and Wilner.[2]

**Redford**

Bullock's allegation that she was discriminated against when Redford was promoted to the junior client services manager position fails because she cannot show that she was more

---

[2]In her response, Bullock only addresses Redford's selection to the positions of Customer Service Manager (a "junior client services manager" position) and Assistant Vice President for Employee Benefit Outsourcing and Schilling's selection as Operating Manager for AT&T. Therefore I will assume that she does not contend there was a failure to promote with respect to the positions held by Nowakowski and Wilner, and any claims she had with respect to their positions are dismissed.

qualified than he was for the position. The junior client services manager position involved detailed actuarial benefits determinations, interactions with the Internal Revenue Service and other legal matters. Bullock claims that the unspecified amount of time when she was responsible for overseeing the manual calculations team at ASA, her "subject matter expertise" in defined benefits and older deferred vested pensions and her responsibilities in training individuals concerning the AT&T plans all qualified her for the job of Customer Service Manager.

Before Redford was promoted in 2003, he was supervisor of the Manual Calculations team. At that point, he was at roughly the same level as Bullock. At that point, Redford had been overseeing the Manual Calculations team for almost 2 years, and he held a Certified Employee Benefits Specialist ("CEBS") certification. Plaintiff does not dispute that Redford also had a thorough understanding of the AT&T plan document, the AT&T pension calculation and the AT&T summary plan description. Bullock even agrees that Ken Mayda, the AT&T client relationship Manager, saw Redford as the "go-to guy" for manual calculations.

Even assuming that Bullock supervised the manual calculations team up until Aon acquired ASA (giving her as much experience supervising manual calculations as Redford), Redford still has a CEBS certification, Bullock does not. Also, Plaintiff admits that Redford received the promotion strictly based on his job performance. Therefore she has not established that she was more qualified than he was for the position. Since she cannot prove she was more qualified for the junior client services manager position, Bullock also cannot prove that she was more qualified for the Assistant Vice President position, since Redford was no longer similarly

situated to her once he was promoted to Customer Service Manager. At that point he already held a superior position to her within the organization and reported directly to Mayda.

**Schilling**

Bullock also fails to meet the fourth prong of the test with respect to Cheryl Schilling temporarily taking the job as Operating Manager for AT&T. Before Schilling took the position as Bullock's direct superior, she worked on Aon's Lucent team and reported directly to William Carroll, a senior vice president. In 2004 she started reporting to Hebenstreit – the same person to whom Pat Wilner (Bullock's supervisor) had reported. Bullock tries to claim that her better educational background and five years of experience dealing with AT&T's plan made her more qualified for Wilner's former position.

In order to show that another employee is "similarly situated," Bullock must show that she is directly comparable to that employee in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). This includes relevant factors such as whether the employees had the same supervisor, were subject to the same standards, engaged in similar conduct, and their relative levels of education. However, "an employee need not show complete identity in comparing himself to the better treated employee . . . ." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000).

Plaintiff does not deny that she held different positions, reported to different managers, and performed different job functions than Schilling, but suggests that she should not be limited to comparing herself to employees that reported to the same manager, since lesser qualified people were selected to the positions she would have taken. However, in this case, Bullock did not necessarily need to show that she and Schilling reported to the same manager. It would have

sufficed to show that Schilling had the same relative position in Aon dealing with Lucent as Bullock had dealing with AT&T, that of a team leader. Bullock has not shown that. Schilling already held a position superior to Bullock's before she became the operating manager for AT&T. There is also no evidence that Schilling's educational background relative to Bullock's was considered during any decision to promote. In all, there is nothing to show that Bullock was similarly situated, or as qualified for the position as Schilling. Therefore I must grant summary judgment to Aon on Bullock's claims of discrimination in job opportunities.

**Racial Discrimination in Bullock's Discharge under Title VII**

Title VII also makes it illegal for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This claim uses the same indirect, burden-shifting method, in which Bullock must first show that: (1) she belongs to a protected class; (2) she was performing up to Aon's legitimate expectations; (3) she suffered an adverse employment action; and (4) Aon treated similarly situated employees outside the protected class more favorably. *Mateu-Anderegg v. School Dist. of Whitefish Bay*, 304 F.3d 618, 625 (7th Cir. 2002).

Aon does not dispute the first and third elements, but argues that Bullock cannot establish that she was qualified to be retained or rehired, because she was unable to perform the job responsibilities of her team members. Aon also argues that similarly situated employees were not treated more favorably, because at least one Caucasian supervisor and a number of other Caucasian employees were also discharged.

To show that she was qualified, Bullock only needs to produce some evidence that she was meeting Aon's legitimate expectations. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999). To satisfy this burden Bullock produced her performance evaluations for 2002 and 2003, both of which show that she was at least meeting Aon's expectations in all areas, and exceeding them in some. However, the fact that Plaintiff had received positive performance evaluations is not sufficient evidence that she was meeting her employer's legitimate expectations. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991) (In ascertaining whether a plaintiff has met his employer's legitimate expectations, the issue is not the employee's past performance, but "whether the employee was performing well at the time of his termination"). In addition, the evaluations confirm Aon's legitimate reason because they also mention the need for Bullock to learn how to perform the duties of her subordinates.

Bullock has no other evidence that she was meeting Aon's legitimate expectations, so she has not proven that element of the test. Even if Plaintiff had met Aon's legitimate expectations, she has not offered any evidence showing that Defendant's proffered reasons for terminating her employment are pretext.[3]

---

[3]Bullock attempts to formulate an argument, contending that her current complaint about Wilner being the beneficiary of racially disparate treatment and Wilner's potential influence on Hebenstreit's assessment of Plaintiff should be considered when analyzing pretext. However, in her deposition, Bullock clearly states that she only believes that Wilner discriminated against her if Wilner took part in the decision to fire her. If Wilner did not take part, then she does not believe Wilner discriminated against her. This logic does not hold. In order to show discrimination, Bullock would have to show that Hebenstreit would not have made the decision to fire Bullock if not for Wilner's recommendation, and that the recommendation was motivated by a racist attitude. *See Lust v. Sealy, Inc.*, 383 F.3d 580, 584 (7th Cir. 2004). Even if Wilner made a recommendation, Bullock has no evidence of any such attitude. Based on her own testimony, if Wilner was not responsible for Bullock's termination, then Bullock does not think

**Racial Discrimination under 42 U.S.C. §1981**

Federal law prohibits all racial discrimination within the context of "making and enforcing contracts." 42 U.S.C. §1981(b). As with Title VII, a plaintiff may meet her burden of proof in an action under §1981 by offering direct or indirect proof of discriminatory intent. *See Sample v. Aldi Inc.*, 61 F.3d 544, 547 (7th Cir. 1995). "Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir. 1996). Since the §1981 claim is based on the same occurrence and set of facts as one of the Title VII claims, it must also be dismissed for failure to meet the elements of the indirect method.

For the reasons stated above, Defendant's motion for summary judgment is granted.

ENTER:

*James B. Zagel*
_____
James B. Zagel
United States District Judge

DATE: April 28, 2006

---

that Wilner has ever discriminated against her.